IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY BURDEN, | * | |
| | * | Civil No. 3:05CV433-F |
| Defendant-Petitioner, | * | |
| | * | |
| v. | * | Orig. Criminal No. CR-02-0954 |
| | * | |
| DONAL CAMPBELL, Director, | * | |
| Alabama Dept. of Corrections, and | * | |
| TROY KING, Attorney General, | * | |
| | * | |
| Plaintiffs-Respondents. | * | |

**MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254**

As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant case constituted a denial of the Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Untied States Constitution and his right to a fair trial as guaranteed by the Sixth Amendment to the United States Constitution. These errors were not merely procedural, but substantially infringed upon the Petitioner's constitutional rights. At a minimum, the Petitioner requests a hearing be held on these issues.

**STATEMENT OF THE ISSUES**

I.   THE PETITIONER'S RIGHTS TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN A JUROR HAD IMPROPER CONTACT WITH A WITNESS.

II.  THE PETITIONER'S RIGHTS TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED

WHEN A JUROR FAILED TO STATE THAT HE HAD A CLOSE, PERSONAL RELATIONSHIP WITH THE FAMILY OF THE VICTIM.

III. THE PETITIONER'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN HE WAS CONVICTED UPON INSUFFICIENT EVIDENCE.

IV. THE PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING ON THESE MATTERS.

## STATEMENT OF JURISDICTION

Federal law provides a safety net for defendant's whose constitutional rights have been violated. Title 28 U.S.C. § 2254 is a statute that provides an avenue for redress of state court federal constitutional violations in a federal court. "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Petitioner feels that his best opportunity to obtain fair and substantial justice is in the federal court system, away from the blinders of the state court system that believes that anyone charged with a violent felony *must* be guilty.

## ARGUMENT

In order to succeed in a § 2254 motion, a petitioner must show that the adjudication of a claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law." 28 U.S.C. § 2254 (d)(1). The Constitution, as the framework from which all Federal law springs, must not be violated as applied to the Petitioner.

2

In order to raise an issue in a § 2254 motion, an individual must exhaust all other state remedies on a given issue, which ultimately requires that the issue be appealed to the state Supreme Court. "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the court of the State[.]  * * *  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State * * * if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(b), (c).

In his petition for writ of certiorari to the Alabama Supreme Court, the Petitioner raised the following arguments:

I.  Whether the trial court abuse dits discretion when it denied the Petitioner's motion for a mistrial when it was alleged that a juror had improper contact with a witness?

II. Whether the trial court abuse dits discretion when it denied the Petitioner's motion for a mistrial based upon juror misconduct for failure to disclose a personal relationship with the family of the victim?

III. Whether the trial court erred when it denied the Petitioner's motion for directed verdict at the end of the State's case, based upon insufficiency of the evidence?

As these issues were litigated to the highest court in the state, they have been preserved as issues for this § 2254 motion. If the answer to these questions is in favor of the Petitioner, this motion must be granted.

I.  **THE PETITIONER'S RIGHTS TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN A JUROR HAD IMPROPER CONTACT WITH A WITNESS.**

In evaluating due process claims, this court inquires whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). As stated by Justice Frankfurter, due process:

> embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due process is that which comports with the deepest notions of what is fair and right and just.

Solesbee v. Balkcom, 339 U.S. 9, 16, 70 S. Ct. 457, 461, 94 L. Ed. 604 (1950).

The Due Process Clause will be validated upon actions that "violate those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling, 493 U.S. at 352-53, 110 S.Ct. at 674. The "primary guide in determining whether the principle in question is fundamental is, of course, historical practice." Montana v. Egelhoff, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996).

The Sixth Amendment of the United States Constitution, since its inception more than 200 years ago, guarantees a criminal defendant the right to trial by an impartial jury. The right to a trial by an impartial jury lies at the very heart of due process. Irvin v. Dowd, 366 U.S. 717,

4

721-722, 81 S.Ct. 1639, 1641-1642, 6 L.Ed.2d 751 (1961). "[O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose--to provide a fair and reliable determination of guilt." Estes v. Texas, 381 U.S. 532, 565, 85 S.Ct. 1628, 1644, 14 L.Ed.2d 543 (1965) (Warren, C.J., with whom Douglas and Goldberg, JJ., joined, concurring).

The United States Supreme Court requires that a jury's verdict be based on evidence received in open court, not from outside sources. Sheppard v. Maxwell, 384 U.S. 333, 351, 86 S.Ct. 1507, 1516, 16 L. Ed.2d 600, 613 (1966). The Supreme Court has held that, "in the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from a witness stand in a public courtroom where there is full protection of the defendant's right of confrontation, of cross-examination, and of counsel." Turner v. Louisiana, 379 U.S. 466, 472-73, 13 L.Ed.2d 424, 85 S.Ct. 546 (1965). To safeguard a defendant's constitutional rights, the exposure of a jury to extrinsic information has been "deemed presumptively prejudicial." Remmer v. United States, 347 U.S. 227, 229, 98 L.Ed.2d 654, 74 S.Ct. 450 (1954). In a criminal case, a presumption of prejudice attaches when there is "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury." Id. The burden is upon the government to establish that the juror contact was harmless to the defendant. Id.

In the instant case, juror Patricia Boykin was witnessed sitting and talking to the State's main witness, Jeanette Baker. Boykin later admitted that she had discussed the case with other jurors, following her contact with Baker. (Trial Transcript, Vol. III at 406-07). Clearly, then a presumption of prejudice had to attach to the instant matter as a result of this communication.

5

However, because Boykin was an alternate juror, the state trial court failed to grant a mistrial. (Trial Transcript, Vol. III at 399-419). However, applicable law regarding the instant issue does not distinguish between an alternate and a regular juror. The inquiry instead focuses on whether the tainted juror has further tainted the jury. It seems clear that at least a perception exists that Boykin could have exposed the jury to evidence not obtained on the record during the trial, but to extra-record evidence that was introduced to jurors absent the constitutional fair trial and due process guarantees of the Petitioner. Such a state of affairs should not have been allowed to exist, and a mistrial should have been granted.

As the Petitioner's rights to due process of law and a fair trial were violated when a juror had contact with the State's main witness, the Petitioner submits that his conviction and subsequent sentence must be vacated.

**II. THE PETITIONER'S RIGHTS TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN A JUROR FAILED TO STATE THAT HE HAD A CLOSE, PERSONAL RELATIONSHIP WITH THE FAMILY OF THE VICTIM.**

In evaluating due process claims, this court inquires whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). As stated by Justice Frankfurter, due process:

> embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due process is that which comports with the deepest notions of what is fair and right and just.

Solesbee v. Balkcom, 339 U.S. 9, 16, 70 S. Ct. 457, 461, 94 L. Ed. 604 (1950).

The Due Process Clause will be validated upon actions that "violate those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling, 493 U.S. at 352-53, 110 S.Ct. at 674. The "primary guide in determining whether the principle in question is fundamental is, of course, historical practice." Montana v. Egelhoff, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996).

The Due Process Clause will be validated upon actions that "violate those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling, 493 U.S. at 352-53, 110 S.Ct. at 674. The "primary guide in determining whether the principle in question is fundamental is, of course, historical practice." Montana v. Egelhoff, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996).

The Sixth Amendment of the United States Constitution, since its inception more than 200 years ago, guarantees a criminal defendant the right to trial by an impartial jury. The right to a trial by an impartial jury lies at the very heart of due process. Irvin v. Dowd, 366 U.S. 717, 721-722, 81 S.Ct. 1639, 1641-1642, 6 L.Ed.2d 751 (1961). "[O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to

the position that the criminal trial has one well-defined purpose--to provide a fair and reliable determination of guilt." Estes v. Texas, 381 U.S. 532, 565, 85 S.Ct. 1628, 1644, 14 L.Ed.2d 543 (1965) (Warren, C.J., with whom Douglas and Goldberg, JJ., joined, concurring).

The United States Supreme Court requires that a jury's verdict be based on evidence received in open court, not from outside sources. Sheppard v. Maxwell, 384 U.S. 333, 351, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600, 613 (1966). The Supreme Court has held that, "in the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from a witness stand in a public courtroom where there is full protection of the defendant's right of confrontation, of cross-examination, and of counsel." Turner v. Louisiana, 379 U.S. 466, 472-73, 13 L.Ed.2d 424, 85 S.Ct. 546 (1965). To safeguard a defendant's constitutional rights, the exposure of a jury to extrinsic information has been "deemed presumptively prejudicial." Remmer v. United States, 347 U.S. 227, 229, 98 L.Ed.2d 654, 74 S.Ct. 450 (1954). In a criminal case, a presumption of prejudice attaches when there is "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury." Id. The burden is upon the government to establish that the juror contact was harmless to the defendant. Id. Furthermore, when an allegation of juror misconduct is raised, it must be determined whether there is a "substantial possibility" that the juror is not basing her decision on the sufficiency of the evidence. United States v. Abbell, 271 F.3d 1286, 1303 (11th Cir. 2001).

In the instant case, juror Detina Jones was witnessed leaving the court house after trial on several occasions with John Wesley Bell. (Trial Transcript, Vol. I at 000029, 000031). Bell is married to Jeanette Baker's sister and is also the son of the brother of the grandfather of Detina

Jones. Jones and Bell are therefore related, as are Jones and Baker. However, during voir dire, Jones did not make it known that she was related to any of the proposed witnesses in this matter. (Trial Transcript, Vol. I at 7, 8). Clearly, then a presumption of prejudice had to attach to the instant matter as a result of this contact between Bell and Jones. It seems clear that, based upon the relationship between Jones, Bell, and Baker, at least a perception exists that Jones could have exposed the jury to evidence not obtained on the record during the trial, but to extra-record evidence that was introduced to jurors absent the constitutional fair trial and due process guarantees of the Petitioner. Furthermore, it is patently clear that a substantial possibility exists that Jones did not base her decision regarding guilt in this matter upon the sufficiency of the evidence. Consider, Jones lied about not knowing any of the witnesses and had direct contact with members of the victim's family. Jones had no regard for the court's instructions regarding juror conduct, namely that jurors be truthful. Therefore, there is no reason to believe that Jones' conduct magically shifted into an altruistic and honest mode once the jury retired for deliberations. Such a state of affairs should not have been allowed to exist, and a mistrial should have been granted.

As the Petitioner's rights to due process of law and a fair trial were violated when a juror had contact with the State's main witness, the Petitioner submits that his conviction and subsequent sentence must be vacated.

**III.   THE PETITIONER'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN HE WAS CONVICTED UPON INSUFFICIENT EVIDENCE.**

In evaluating due process claims, this court inquires whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). As stated by Justice Frankfurter, due process:

> embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due process is that which comports with the deepest notions of what is fair and right and just.

Solesbee v. Balkcom, 339 U.S. 9, 16, 70 S. Ct. 457, 461, 94 L. Ed. 604 (1950).

The Due Process Clause will be validated upon actions that "violate those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling, 493 U.S. at 352-53, 110 S.Ct. at 674. The "primary guide in determining whether the principle in question is fundamental is, of course, historical practice." Montana v. Egelhoff, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996).

The Fifth Amendment right to due process arose as a reaction to such previous European judicial bodies as the infamous Star Chamber and the Inquisition, in which judges reigned supreme, without any control from such bodies as a jury. United States v. Gecas, 120 F.3d 1419 (11th Cir. 1997). In such systems, individuals could be tried, convicted, and sentenced without any regard to the burden of proof needed to sustain a conviction. The rules regarding the burden of proof have historically served to remedy such problems.

One can hardly imagine a system more ingrained in the heart of the American judiciary than the notion that one can not be convicted absent proof of guilt beyond a reasonable doubt. Due process rights, such as the need to prove elements of a crime beyond a reasonable doubt, protect against errors in fact finding. In <u>Cage v. Louisiana</u>, 498 U.S. 39, 40 (1990). the Supreme Court stated that the "reasonable doubt standard "plays a vital role in the American scheme of criminal procedure. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error. Furthermore, as noted in <u>In re Winship</u>, 397 U.S. 358, 364 (1970), "a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." <u>Winship</u> itself makes clear that the requirement of proof beyond a reasonable doubt is grounded upon accuracy concerns:

> The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction.

<u>Id.</u> at 364.

> The 'demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula "beyond a reasonable doubt" seems to have occurred as late as 1798. It is now accepted. . . as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt.

<u>Id.</u> at 361 (quoting C. McCormick, Evidence § 321, pp. 681-82 (1954)).

In the instant case, the Petitioner was charged with murder in violation of Ala. Code § 13A-6-2. Such a conviction requires that a defendant be guilty of, with intent to cause the death

11

of another person, causing the death of that person or of another person; or "under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person." Ala. Code § 13A-6-2. Therefore, causation is an element of the offense. In fact, in determining causation, the trial court must examine whether the free will of an actor is enough to break the chain of causality between participants in the offense. Lewis v. State, 474 So.2d 766 (Ala.Crim.App. 1985). Furthermore, it must be shown that a defendant acted with extreme indifference to human life. Such an act must normally be an extraordinary act, as it has been held that striking an individual with a rake while the victim was on a bicycle, causing the victim to swerve in front of a truck and die as a result of the collision. McCormack v. State, 431 So.2d 1340 (Ala. 1983).

In the instant case, the Petitioner's involvement was to walk up to Philip Burden and shout such things as "Shoot the M-F and the S-O-B." Philip Burden eventually shot Jermicah Foster, causing his death. Prior to the Petitioner's involvement in the instant matter, Philip Burden had retrieved a shotgun and had been involved in a fistfight with a friend of Foster prior to the shooting. Philip Burden had been struck in the eye during the altercation, causing him to bleed. Philip Baker, while holding his shotgun, threatened to kill Calvin Baker, the friend of Mr. Foster. Philip Burden also threatened to kill Foster. Clearly, Philip Burden intended to kill Foster, as he obtained a shotgun and threatened to use it. Such activity exhibits a careless disregard for human life. Such behavior also exhibits an intent to commit the crime of murder.

Such can not be said of the Petitioner's actions in the instant matter. The Petitioner, at worst, merely told Philip Burden to shoot another individual. Is a statement enough to cause

another to act, especially when judged in light of the fact that the individual to whom the statement was made was already prepared to act? Put another way, did Philip Burden act with free will despite any statement made by the Petitioner? Did the Petitioner's statement cause Burden to act? The answer, in light of Philip Burden's actions leading up to the shooting, clearly indicate that Burden intended to shoot someone, regardless of any statements made by the Petitioner.

Clearly, as the Petitioner did not possess the requisite intent or commit any act that provided a causal link between his acts and the murder at issue, the Petitioner could not have been convicted beyond a reasonable doubt. As such, the Petitioner submits that his right to due process of law was violated in this matter, requiring that this court vacate the Petitioner's conviction and subsequent sentence.

## IV.    THE PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING ON THIS MATTER.

The Petitioner contends that he is entitled to an evidentiary hearing on these issues. In order to be granted an evidentiary hearing, a habeas corpus petition must allege sufficient facts which, if true, would support the conclusion of law advanced. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770, 785 (1963); McCoy v. Wainwright, 804 F.2d 1196 (11th Cir. 1986). A petition for habeas corpus requires a hearing unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. Chandler v. United States, 218 F.3d 1305, 1330 (11th Cir. 2000).

13

In the present case, the Petitioner contends that he has set forth facts in his petition that entitle him to relief. Therefore, at a minimum, the Court should order an evidentiary hearing in this matter.

## V.   CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that this Honorable Court grant his motion for post-conviction relief or at a minimum, grant him an evidentiary hearing.

Respectfully submitted,

*/s/ Robert A. Ratliff*
Robert A. Ratliff, Esq.
Attorney for the Petitioner
P.O. Box 2353
Mobile, AL 36652
Telephone: (251) 432-1656