# IN THE CRIMINAL APPEALS COURT OF THE

# STATE OF ALABAMA

# ON

# APPEAL FROM

# CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

# CIRCUIT COURT CASE NO.: CC 2001-114,

| | | |
|---|---|---|
| ANTHONY BURDEN, | ) | |
| APPELLANT, | ) | |
| VS. | ) | CR-02-0682 |
| STATE OF ALABAMA, | ) | |
| APPELLEE. | ) | |

**CLERK'S CERTIFICATE**

**OF COMPLETION 3/28/03**

TO: THE CLERK OF THE COURT OF CRIMINAL APPEALS

OF ALABAMA



**ATTORNEY FOR APPELANT**
**111 SOUTH QUINTARD AVE.**
**P. O. BOX 2641**
**ANNISTON, AL 36201**

## CERTIFICATE OF SERVICE

I certify that I have this date served a copy of the foregoing brief and

argument on each of Counsel of record for Appelle (s). The Appellant, in

compliance with Rule 30(g), ARAP: [ ] elects to prepare and file on

appendix to brief as provided in Rule (30) (b), ARAP, and designates from

the record on appeal the following to be included in such

Appendix:

| Documents, Exhibits, names of witnesses, etc. | Page No. |
|---|---|
| Motion to Supplement Record | A |
| Amended Motion to Supplement Record | A |
| Affidavit of LaToya Hendricks Burden | B |
| Affidavit of Chief of Roanoke Police | C |
| Affidavit of Clerk of Roanoke City | C |
| Census Data Roanoke | D |

PURSUANT TO RULE 34 (A):

[X] I do not desire oral argument.
[ ] I have demanded oral argument and so indicated on the cover of my
brief.
Dated this ___29___ day of April, 2003.

COUNSEL FOR APPELLANT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................... ii

STATEMENT OF THE CASE........................................….. 1

STATEMENT OF THE ISSUE(S)…........................................ 4

STATEMENT OF THE FACTS…........................................... 5

SUMARY OF RULINGS
AND ACTIONS
ADVERSE TO APPELLANT................................................10

ARGUMENT…..............................................................11

CONCLUSION…........................................................... 21

CERTIFICATE OF SERVICE …......................................... 22

APPENDIX….............................................................. 23
(Exibits A,B,C,D)

i

# TABLE OF AUTHORITIES

| **AUTHORITIES** | **PAGE REFERENCE** |
|---|---|
| Eaton v. Horton | 16 |
| Golden v. State | 15 |
| Mitchell v.State | 14 |
| Oliver v. State | 12 |
| Roan v. State | 12 |
| Smith v. State | 16 |
| S. L Smith v. State | 11, 13 |
| Tidewell v. State | 13 |
| Wiggins v. State | 11 |
| Wright v. State | 11, 13 |

# IN THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF ALABAMA

| | | |
|---|---|---|
| ANTHONY BURDEN, | ) | |
| APPELLANT, | ) | |
| VS. | ) | CASE NO.: CR-02-0682 |
| STATE OF ALABAMA, | ) | |
| APPELLEE. | ) | |

## BRIEF OF THE APPELLANT

**COMES NOW**, the Appellant, Anthony Burden, by and through his attorney of record and files this Appellate Brief.

## STATEMENT OF THE CASE

This is a criminal case on appeal from the Randolph County Circuit Court. The Appellant was indicted on the 7th day of September 2001 to the charge of Murder. Appellant applied for treatment as a youthful offender but his petition was denied. The court determined that Appellant would be tried with his uncle Andrew Phillip Burden for Murder. Appellant entered his plea of not guilty to the charge of murder during the arraignment of the defendants. Appellant was found guilty of the charge of murder after a trial that lasted three days. During the trial the State's main witness, Jeanette Baker became

1

so upset in her testimony about the death of her nephew that she was

overcome with emotion and recess was granted by the court to allow her

space to compose herself. Jeanette Baker testified that she saw her son

Shawn and Appellant Phillip Burden fighting. She helped stop the fight

insisted that her son, Shawn go back up the street and Phillip Burden left the

area. Appellant Phillip Burden returns with a shotgun and starts up

Government Street seeking Shawn who is said to be jumping up and down on

the back of a car yelling at Phillip Burden to "come on". Appellant Phillip

Burden continues up the street but stops to apologize and hug Jeanette

Baker's neck and says he is sorry for pointing the shotgun at her. They talk

and Phillip says that he was almost persuaded by Jeanette Baker to go on and

let it go but Shawn Baker starts yelling again yelling and jumping on the back

of a car and cursing. Appellant Phillip Burden takes off going on up to the

place where Shawn Baker was calling him to come. The two nieces of

Jeanette Baker and Jeanette Baker then testified that Appellant Anthony

Burden said "words to the effect of "shoot the nigger" bust him" and at the

time of these words a crowd gather around Appellant Andrew Phillip Burden.

The shotgun is fired and Jermicah Foster (Rat) is hit in the side of the head.

He falls dead in the street. Appellant Andrew Phillip Burden runs away with

2

the shotgun.  The police are called and Jermicah Foster is found dead in the street.  Sometime later Appellant Andrew Phillip Burden gives a statement to the police after he turned himself in and the case is tried.  Appellant Anthony Burden is arrested on the scene and charged with murder as an accomplice.

During the jury selection two alternates jurors were selected by agreement of the attorneys, the last jurors struck were the alternates.  On the day the trial was completed just after the jury returned with its verdicts, it was, pointed out to Appellant Anthony Burden's attorney that a juror had been seen sitting with Jeanette Baker, the chief witness for the State, during the time the jury was on break for lunch.  The court heard testimony on this issue.  A motion for mistrial was presented by Appellants and denied by the court.  Additionally it was learned that one of the jurors had been picked up on Tuesday and Wednesday by one John Wesley Bell.  John Wesley Bell is the brother in law of Jeanette Baker, the main witness for the state.  A second motion for mistrial was made and it was denied.  Judgment was rendered and Appellant Andrew Phillip Burden was sentenced to life in prison and Appellant Anthony Burden was sentenced to 30 years in prison both have appealed the convictions.

## STATEMENT OF THE ISSUES

I.      Did the trial court abuse its discretion when it denied the Appellant's motion for a mistrial when it was alleged a juror had improper contact with a witness.

II.     Did the trial cover abuse its discretion when it denied the Appellant's motion for mistrial for juror misconduct for failing to disclose close personal relationship of the juror for the family of the victim.

III.    Did the trial court err when it denied the Appellant's motion for directed verdict at the end of the State's case for failure to introduce and meet sufficient evidence to convict the Appellant of murder.

4

## STATEMENT OF THE FACTS

We see the bias that over shadowed this case by looking at the action

of Jeanette Baker from the Friday night conflict at the house (see RT Vol. III

p. 372).  The police are called.  They come out.  The family of Jeanette Baker

is in the street asked to leave the property of Katie Hendrix (see RT Vol. III

p. 372).  Saturday night Jeanette Baker and her family are out in the street at

1:00 a.m. in the morning arguing at the four way stop (see RT Vol. III p.

327).  The police are called.  The next day ( Sunday) Jeanette Baker is back

in the street, has a conflict with Rita Hendrix. Then she sees her son Shawn in

a fight at Tag, the bootlegger's yard ( see RT Vol. II p. 163).  Jeanette Baker

runs over there hits her son Shawn on the shoulder but does not see the blood

on the face of Phillip who had been beaten by the shoe of Shawn's girlfriend

while Shawn and Phillip held each other in a stalemate (see RT Vol. II p.

190).  Jeanette Baker's bias kept her from hearing her son cursing and yelling

at Phillip to "come on and get some more "m-f" etc. ( see RT Vol. III p. 350).

Jeanette Baker's bias prevented her from admitting that but for the taunting

and yelling that her son Shawn did, which he continued to do while Phillip

talked to her and others about leaving with the shotgun and letting the fight

go; the death of Rat may not have happened.  Phillip was about to let it go but

5

Shawn kept jumping on the car yelling (see RT Vol. III p. 351). Look at the testimony of the unbiased witness Jim Dandy( see RT Vol. III p. 324). What did he see and hear? He heard and saw Shawn, Not "Anthony", but Shawn Baker calling Phillip to come on up the street. Take away the bias and ask why would a man (Phillip) who has been in a fight and beaten in the eye by the girlfriend of Shawn go after anybody else, especially while the person who held him while he was being hit is yelling and cursing and jumping up and down on a car to get his attention? Look at what Phillip said he did out of his own mouth:

1) I rode to Tag's house with Pokey. (see RT Vol. III p. 346)

2) I went into Tag's and come out and I saw Rat and Shawn. (see RT Vol. III p. 346)

3) I went to Rat and shook hands with him said "Let all that threatening go" (see RT Vol. III p. 341) when you talk about the Burdens. I don't have no problem with you.

4) He goes over to Shawn and sticks out his hand to do the same thing and a fight breaks out. (see RT Vol. III p. 346)

6

5)    The fight was not between Rat and Phillip, but the fight

everybody testified, was between Phillip and Shawn. (see RT

Vol. III p. 346)

6)    After being beaten in the eye to the point where blood was

coming out and he could not see out of his eye, Phillip finally

gets on his feet and goes off looking for a "stick or something to

get back at Shawn". (see RT Vol. III p. 349)

7)    Phillip gets a shotgun and comes back to the street where he and

Shawn were fighting.  He was looking for Shawn.  Every

witness said the fight was between Phillip and Shawn even the

Bakers say this. (see RT Vol. II p. 225)

8)    Phillip points the shotgun at Jeanette Baker but he determines

who she is and lowers the shotgun and apologized and hugged

her neck.  They talked for some period of time. (see RT Vol. II

p. 230)

The key to this case is Jeanette Baker and her bias.  She does not

recall Shawn at any point "yelling, cursing and calling Phillip names, telling

Phillip to come on get some more" but she only remembers that Shawn did

some things (see RT Vol. II p. 192, 193, 194, 195).  Her bias against

7

Anthony Burden makes her say that Anthony Burden not Shawn caused Phillip to change his mind and not let it go but to go on back up the street toward the house and shoot the shotgun and kill Rat. Yet Phillip Burden said it was an accident. (see RT Vol. III p. 354). Jeanette Baker did admit Phillip was after Shawn (see RT Vol. II p. 195).

Logic and bias must separate. Why would Phillip stop his pursuit of Shawn to turn his wrath toward Rat? Would the truth be more logical that Shawn was doing what Phillip said he was doing (jumping on the back of the car yelling, cursing, and calling for Phillip to come let him finish what he started". Phillip says that's what made him start up the road again after he talked to Jeanette Baker (see RT Vol. II p. 352). Jim Dandy said that Pokey and others were gathered around Phillip trying to take the shotgun from Phillip. Phillip says that he had the shotgun and somebody hit his arm and the gun accidentally went off hitting Rat in the side of the head (see RT Vol. III p 354). Phillip said he was not after Rat, that he was after Shawn. Phillip said he could not see out of his eye and he was not shooting (aiming) at Rat (see RT Vol. III p. 354). Jeanette Baker, Shawn, Rat, Shy, Shawn's girlfriend, were walking with LaTarsha Winston, LaTanya Winston and Lenice Baker up the street after the fight. She did not mention Anthony Burden. She was

8

in the house when she heard the shot that killed Rat.  She said Shawn was in the house and she heard the shot (see RT Vol. II p. 232).  Lenice Baker stated that she saw Phillip in the street with the shotgun about 15 minutes before the shot (see RT Vol. II p. 244).  LaTanya Winston stated she was Ms. Jeanette Baker niece (see RT Vol. II p. 219).  Ms. Lenice Baker said she is Ms. Jeanette Baker's daughter (see RT Vol. II p. 222).  She started to say how she knew Anthony and the prosecutor cut her off by asking a question (see RT Vol. II p. 222).  See also the relationship between Jeanette Baker and LaTanya Winston (see RT Vol. II p. 206, 208, 219). See the Affidavit of LaToya Hendrix Burden (Appendix Ex B). The trial takes place and during the trial Jeanette Baker is seen sitting with one of the jurors. A Motion for Mistrial was filed and a hearing was held (see RT Vol. III pp. 399-445). The trial court denied the Motion for Mistrial. A second hearing was held on December 2, 2002 (see RT Vol. III pp. 447-469). Justice was denied.

9

# SUMMARY OF RULINGS

## AND ACTIONS

### ADVERSE TO APPELLANT

1. **Indictment** — 000006

2. **Order (Youthful Offender Denied)** — 00013

3. **Strike List** — 00021

4. **Verdict** — 00022

5. **Verdict Order** — 00023

6. **Motion for Mistrial and** — 00024-28

7. **Order (Restitution)** — 00045

8. **Order Denied Mistrial** — 00046

9. **Memorandum of Co-Defendant Andrew Phillip Burden Motion for Judgment of Acquittal or In the Alternative Motion for New Trial** — 000101

10. **Ruling of Court** — 00420

## ARGUMENT

I.    **Did the trial court abuse its discretion when it denied the Appellant's motion for a mistrial when it was alleged a juror had improper contact with a witness?**

When we look at the language of <u>Wright v. State</u>, 262 Alabama 420, 79 So 2d 74 where the court said "it would be for better to do away with all jury separations in felony cases – regardless of consent. Jury tampering or canvassing is not a lost art" we understand where we are. See <u>Wiggins v. State</u>, Alabama App.,104 So. 2d 560. The standard is a separation of a Jury during trial of a felony creates, prima facie, a cause for reversible error, and a separation being shown, burden is on the state to affirmatively establish that separated juror or jurors were subjected to no influence or contacts that might have influenced their verdict. <u>S. L. Smith v. State</u>, 39 Alabama App. 501, 105 So 2d 662.  When the trial court had the issue of improper jury contact presented the court was presented with the following set of facts.

1.    Sworn testimony of Gwendolyn Phillips taken by the court on October 31, 2002 and November 4, 2002 presented a statement that juror Patricia Boykin had been seen sitting and talking to state's

11

witness Jeanette Baker in the hall of the courthouse. Did the trial

court consider the circumstances and the facts the juror **might have**

**influenced** their verdict. Mrs. Boykin admitted under cross-

examination by Mr. Rodney, that she had discussed certain things

with the other jurors in the case (see Vol. III P. 406 & 407). She

responded to his question in such a way that one would be well

within a reasonable belief that when the court in Wright v State,

Supra stated: "It is now the well settled rule in this jurisdiction that

a separation of jury during the trial of a felony creates prima facie,

cause for reversible error." The Court was not saying that if the

juror is an alternate juror that states that "she has discussed some

aspects of the case with her fellow jurors"(see RT Vol. III p. 406,

407, 408, 409). There should not be a different standard to be

applied even if the juror is an alternate as is the juror in question.

See the discussion with the court at the end of the testimony on

October 31, 2003 (see RT Vol. III pp. 399 to 419). The trial court

took the position in this case that because Ms. Boykin was an

alternate, the contact between Ms. Jeanette Baker and she would be

excusable. We do not know what effect she might have,

12

consciously or subconsciously, on the rest of the jury. (See RT Vol. III p. 419, 420). The case of <u>Roan v. State</u>, 225 Ala. 428, 143 So 454 set out the use of the word "**might**" to reflect the test of vitiating influence laid down "not that it did influence a member of the jury to act without the evidence but that it **might** have unlawfully influenced that juror and others".  See also <u>Oliver v. State</u> 232 Ala. 5, 166 So. 615.


**II.**    **Did the trial court abase its discretion when it denied the Appellant's motion for mistrial for juror misconduct for failing to disclose close personal relationship of the juror for the family of the victim?**

In addition attorney for the appellant discovered during the investigation of the action of Juror Ms. Boykin that Mr. John Wesley Bell was seen at the trial on Tuesday and Wednesday.   Affidavits were filed by three (3) different persons who saw him leave with Juror Detina Jones (see RT Vol. I pp. 000029, 000031) which were presented to the court (see also Exhibits A, B, C, D, in attached Appendix). Appellant avers that the misconduct of both jurors has a chilling effect on the jury. The standard of review is whether a

13

juror that has been allowed to separate **"might"** have influenced the decision (see <u>SL Smith v. State</u>, Supra). This is tantamount to an "appearance of impropriety" standard which clearly places this verdict in question. It is obviously improper for a juror to conceal Her biases and biased relationships. It is improper for relatives by blood or marriage to sit in judgment of a felony Defendant, especially in the most serious of cases- a murder case.

"Nondisclosure" by a juror means failing to reveal or withholding material information of which the juror has knowledge. "Intentional" misconduct by nondisclosure occurs when the juror has no inability to understand the question and the juror actually remembers the experience or the juror's forgetfulness is unreasonable. (see <u>Tidwell v. State</u> 37 Ala. App. 228, 66 So 2d 845) Some authorities hold that post-trial relief may be provided even if a juror failed to answer honestly, and not where a juror gave an honest but mistaken response. (See <u>Mitchell v. State</u>; 244 Ala. 503, 14 So 2d 132). When Detina Jones did not indicate to the court during the Voir Dire that she was related to the victim, she has withheld a material fact (see <u>Mitchell v. State</u>, Supra). Appellant Anthony Burden was deprived of his right to a fair trial in violation of both the State and Federal Constitution. The case law has established that in the face of a clearly worded relevant question, has the juror

14

withheld substantial information or misrepresented material facts. Did the trial court consider whether there were sufficient questions asked that would have required Detina Jones to reveal that John Wesley Bell, a retired Roanoke, policeman, who is married to Jeanette Baker's sister, is also the son of the brother of the grandfather of Detina Bell Jones? John Wesley Bell is married to the sister of witness Jeanette Baker. Detina Jones did not answer one question during the jury Voir Dire. The trial court stated at the start of the jury selection process the following:

> The Court: I'm going to ask, first, for the District Attorney, or the District Attorney's Office to identify, both the alleged victim and the Prosecutors that will be involved in this case. Mrs. Baldwin: The victim in this case is Jeremiah Foster. I'll be prosecuting this case. My name is Melody Baldwin, Assistant District Attorney for Randolph County. My boss, Mr. Clark, Rhea Clark, is here, and he will be assisting, and he's the District Attorney for the Fifth Circuit.
>
> The Court: And the same for the Defense.
>
> The Court: What is the place and the date of the alleged offenses?
>
> Mrs. Baldwin: This offense occurred on June 17th of 2001, and it occurred on Wilke Clark Drive in the city of Roanoke.

15

The Court: In Roanoke.

Mrs. Baldwin: Yes.

The Court: Are any of you on the jury venire related by blood or marriage to either of the defendants, to either of the defendant's attorneys, to the prosecutors, or the person alleged to be the victim in this case? Are any of you related by blood or marriage? If you would, come up. (See RT. Vol. I pp. 7, 8).

Mr. Robert Staples came up and stated that "the victim is my nephew." Detina Bell Jones did not identify herself as a relative by marriage of the State's at this time nor at any other point in the whole of the proceeding. Why didn't Detina Bell Jones come up? We surmise that she wanted to be on this jury. She wanted to make sure Anthony Burden was convicted of murder. She sat on her hands throughout the whole process and withheld material information from the defense. When the trial court asked:

The Court: Do any of you have any interest in the conviction or Acquittal of the Defendants, or have you made any promise, or given. Any assurance that you will either acquit or convict these Defendants?

(Whereupon, there was no response.)

16

There should have been a response by Juror Detina Bell Jones. She did not make a sound. Case of Golden v. State, 39 Ala. App. 361, 103 So 2d 52 states that jurors cannot be faulted for failing to disclose information for which they were never asked. There is distinction in this case but, the court made the question and a response was made but not by Detina Bell Jones. On the Voir Dire examination, prospective jurors must answer questions and must answer questions fully, fairly, and truthfully. The parties have a right to truthful answers. It is an act of misconduct for a juror to fail to disclose material information when asked, or to conceal relevant facts or give false answers. See Smith v. State 39 Ala. App. 501, 105 So 2d 662.

Eaton v. Horton, 565 So 2d 183. A party may be entitled to relief because of nondisclosure. The remedy is mistrial. The trial court must be reversed for this abuse of discretion. There is no cure short of mistrial. Additionally, the relationship of the police officer, although he had retired, should have been revealed in the Voir Dire questions. Jeanette Baker was the central figure in the case from top to bottom. Surely her brother-in-law who is seen driving from the courthouse with juror Detina Bell Jones was questionable (See RT Vol. I pp. 000029, 000030, and 000031).

17

She and other jurors discussed certain aspects of the case during breaks. What did the juror, Ms. Boykin, mean when she said, "A few of them, but we didn't go into…."(See RT Vol. III P 407)  Although she denied knowing Jeanette Baker, the affidavit is very clear that she might have not been totally honest with the court. The state has claimed that the witnesses that were waiting to testify, saw Ms. Boykin and were biased for the defense. When we look at the statements, we see several different statements saying the same thing. Was Jeanette Baker biased in any way in her approach to this case? There is no escape from the intentional conduct of Jeanette Baker in this case. Once the trial of the case started, the action of alternate juror Boykin in being seen talking to witness Jeanette Baker, was a major event. The affidavit of LaToya Hendricks Burton found at Ex. B in the appendix plus the affidavits of the Chief of Police of Roanoke, and the clerk found at Ex. C show how vital this is to a murder trial.  Add to this the fact that juror Detina Jones is seen riding in the car with John Wesley Bell, the husband of the sister of the State's chief witness, we see our dilemma. She was a vital participant from the beginning to the finish of all that the State presented. When Jeanette Baker's sister's retired police officer husband, makes contact

with juror Detain Jones, this must qualify as improper jury contact. (See appendix 1, EX A, B, C).

### III.    The trial court did not have sufficient evidence to sustain a murder conviction of Anthony Burden.

When the bias of Jeanette Baker is set off to the side, one can see that the only evidence of any acts that would meet the criteria for aiding and abating a murder charge against Appellant Anthony Burton are non-existent. When of the witnesses are made to reconcile what has been presented, we see that only the bias of Jeanette Baker and her family have Anthony Burden walking up the street with Phillips Burden saying, "Shoot the M-F and the S-O-B!" There is no logic for Anthony Burden to his Rat with his fist and then try to get Phillip to shoot with a shotgun while he is with Rat. There is a flash of truth in the mouth of Jim Dandy as we follow his statement of facts, we see Shawn and Phillip in a fight, Phillip gets beat up and runs off to get a stick and finds a shotgun. Philip comes back and Shawn targets him, inviting him to come get more of what he has given. Phillip has his encounter with Jeanette, gets hugged, and starts calming down, but Shawn won't let it go. Philip breaks away, going to get to Shawn. Rat and Tony meet and they hit

19

each other and Tony goes back to the Hendrix house and the crowd as he accidentally kills Rat.

The murder of Jermicah Foster was a negligent homicide that did not have the factual basis for convicting both Phillip Burden and Anthony Burden. A jury that has misconduct of this magnitude in this case should be required to be dismissed. All of the constitutional rights to a fair trial and due process are thrown out without fair and unbiased jurors. But for Jeanette Baker and her bias against the father of her granddaughter's baby, there would have only been one Burden found guilty.

Bias is deadly, there is no place in our system of justice to allow prejudice and bias to rob us of our rights. A new trial should be granted to the Appellant as grounds for this request as stated as follows:

1. The jury's verdict was against the great weight of the evidence.

2. The jury's verdict was the result of unfair prejudice and emotion.

3. The jury's verdict was contrary to the applicable law.

4. The jury's verdict was the product of bias and misconduct.

5. The jury's verdict was based upon an improper jury charge and limiting instruction.

6. The jury's verdict was based upon improperly admitted evidence.

20

7. The jury's verdict was otherwise contrary to the applicable

authority.

## CONCLUSION

A review of the arguments set forth in this brief and the record

evidence presented demand that the verdict of guilty to the charge of

murder must be set aside and a new trial granted to correct the denial of

a fair trial for Appellant Anthony Burden Abuse of Discretion on the

part of the trial court in failing to declare a mistrial is a valid ground to

set aside this miscarriage of justice.

WHEREFORE, PREMISES CONSIDERED, Appellant requests

this Honorable Court to reverse the Order of the trial Court denying

Appellant's Motion for a New Trial, and remand this cause.


RESPECTFULY SUBMITTED,

NATHANIEL D. OWENS (OWE010)
ATTORNEY FOR APPELLANT
OF COUNSEL
REMEDIES LEGAL SVC. P. C.
P. O. BOX 2641
ANNISTON, ALABAMA 36202
(256) 236-0111

21

**ATTORNEY FOR APPELANT**
**111 SOUTH QUINTARD AVE.**
**PO BOX 2641**
**ANNISTON, AL 36201**

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing brief has been properly served on the Office of the Attorney General, 11 South Union Street, Montgomery, Alabama 36130, by depositing a copy of same in the U.S. Mail properly addressed with adequate postage attached thereon this the 29th day of April, 2003.

**OF COUNSEL**

22

# IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| ANTHONY BURDEN, | ) | |
| APPELLANT, | ) | |
| VS. | ) | CASE NO.: CC-01-0114 |
| | | *COURT OF APPEAL NO. CR-02-0682* |
| STATE OF ALABAMA, | ) | **Filed in Office** |
| APPELLEE. | ) | APR 2 3 2003 |

KIM S. BENEFIELD
Clerk of Circuit Court

## MOTION TO SUPPLEMENT RECORD ON APPEAL

COMES NOW, Appellant Anthony Burden, by and through counsel of record Nathaniel Owens and hereby moves this Honorable Court to Supplement the Transcript and as grounds therefore says as follows:

1.  Appellant was convicted of murder and sentenced to a term of 30 years.

2.  A Motion for Mistrial based on jury misconduct and improper jury contact was denied after an evidentiary hearing on improper jury contact and jury bias was held on December 2, 2002.

3.  Appellant avers that evidence developed and was discovered subsequent to the December 2, 2002 hearing which has surfaced and is essential to the Appellant's allegation of Jury Misconduct and improper jury contact.

4.  Appellant contents that he was alerted to other facts long after the Notice of Appeal was filed in the instant case which would further buttress Appellant's allegations. Improper jury contact and jurors misconduct occurred when Voir Dire failed to disclose the bias's and the predisposition to convict present in the panel.

5.    Appellant avers that one of the jurors, Detina Jones, was left on the jury after the Voir Dire questions were propounded to her because she never responded to any of the following:

  1.    Judge's Questions (See RT Vol. 1 pp 8-11)

  2.    Trial Counsel(s) (See RT Vol. I pp 12, 14, 18, 23, 31, 36,38-40, 42,45, 48, 49, 52-53, 55, 57, 59)

Example p 23 : MS. BALDWIN: Now, some of you have already responded to this in my first question, but I'll just ask it again. Do any of you know the victim in this case Jermicah Foster? If you have responded, you do not need to respond again. Any of you know the victim, Jermicah Foster, or his family?

Even though others responded, Ms. Detina Jones made no response to this question or any other question.

6.    Appellant avers that Ms. Detina Jones was not forthcoming in her answers in that she did not reveal her relationship to John Wesley Bell- a retired police officer and uncle by marriage to the victim Jermicah Foster.

7.    Appellant alleges that Affidavits were given at December 2, 2002 hearing and other documentary evidence have been obtained to support Appellant's claim and Appellant would show that additional documentary evidence and Affidavits would be instrumental in making clear the relationship of juror, Detina Jones, to the victim, and the victim's family in this case.

8.   Appellant would contend that the development of a full record should be a precursor to the submission of a brief in any Criminal case. Appellant was convicted of murder on the bias testimony of three witnesses all of whom were relatives of the juror in question.

9.   Appellant would allege that appearance, if not actual impropriety exists in this case which should not be compounded by a requirement to argue by brief a case on an incomplete record.

WHEREFORE PREMISES CONSIDERED, Appellant seeks the following relief:

1.   Permission to supplement the Record on Appeal.

2.   An extension of time to develop by further evidence or documenting testimony supporting Appellant's contentions.

3.   Any further relief the Court may deem necessary in the premises.

RESPECTFULLY SUBMITTED,

Nathaniel D. Owens (OWEO1O)

Attorney for Appellant, Anthony Burden

OF COUNSEL

REMEDIES LEGAL SERVICE PC

NATHANIEL D. OWENS

ATTORNEY FOR APPELLANT

111 S. QUINTARD AVE.

P.O. BOX 2641

ANNISTON, AL 36201

### CERTIFICATE OF SERVICE

We hereby certify that we have this day served a copy by first class mail postage

pre-paid to the Attorney General's Office at 11 South Union Street, Third Floor,

Montgomery, Alabama on this the __23__ day of __April__, 2003.

OF COUNSEL

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF

## ALABAMA

| | | |
|---|---|---|
| ANTHONY BURDEN, | ) | |
| APPELLANT, | ) | |
| VS. | ) | CASE NO.: CR-02-0682 |
| STATE OF ALABAMA, | ) | |
| APPELLEE. | ) | |

## <u>AMENDED MOTION TO SUPPLEMENT RECORD ON APPEAL</u>

COMES NOW, Appellant Anthony Burden, by and through counsel of record Nathaniel Owens and hereby moves this Honorable Court to Supplement the Transcript and as grounds therefore says as follows:

1.  Appellant was convicted of murder and sentenced to a term of 30 years.

2.  A Motion for Mistrial based on jury misconduct and improper jury contact was denied after an evidentiary hearing on improper jury contact and jury bias was held on December 2, 2002.

3.  Appellant avers that evidence developed and was discovered subsequent to the December 2, 2002 hearing which has surfaced

and is essential to the Appellant's allegation of Jury Misconduct and improper jury contact.

4.    Appellant contents that he was alerted to other facts long after the Notice of Appeal was filed in the instant case which would further buttress Appellant's allegations. Improper jury contact and jurors misconduct occurred when Voir Dire failed to disclose the bias's and the predisposition to convict present in the panel.

5.    Appellant avers that one of the jurors, Detina Jones, was left on the jury after the Voir Dire questions were propounded to her because she never responded to any of the following:

1.    Judge's Questions (See RT Vol. I pp 8-11)

2.    Trial Counsel(s) (See RT Vol. I pp 12, 14, 18, 23, 31, 36,38-40, 42,45, 48, 49, 52-53, 55, 57, 59)

Example p 23 : MS. BALDWIN: Now, some of you have already responded to this in my first question, but I'll just ask it again. Do any of you know the victim in this case Jermicah Foster? If you have responded, you do not need to respond again. Any of you know the victim, Jermicah Foster, or his family?

Even though others responded, Ms. Detina Jones made
no response to this question or any other question.

6.    Appellant avers that Ms. Detina Jones was not forthcoming in
her answers in that she did not reveal her relationship to John
Wesley Bell- a retired police officer and uncle by marriage to
the victim Jermicah Foster.

7.    Appellant alleges that Affidavits were given at December 2,
2002 hearing and other documentary evidence have been
obtained to support Appellant's claim and Appellant would
show that additional documentary evidence and Affidavits
would be instrumental in making clear the relationship of juror,
Detina Jones, to the victim, and the victim's family in this case.

8.    Appellant would further contend that Roanoke Randolph
County, Alabama is not a large County or City.  The size of the
Black African American population is very small.  The size of
the Black Community is related to the number of blacks on the
jury panel.  Census data shows best the size of the black
population of Roanoke, Alabama.  One of the first, if not the
first Black American Police officers in the history of Roanoke,
Alabama was John Wesley Bell.  His retirement was 1998.

9.     Appellant would contend that the development of a full record should be a precursor to the submission of a brief in any Criminal case. Appellant was convicted of murder on the bias testimony of three witnesses all of whom were relatives of the juror in question.

10.     Appellant would allege that appearance, if not actual impropriety exists in this case which should not be compounded by a requirement to argue by brief a case on an incomplete record.

WHEREFORE PREMISES CONSIDERED, Appellant seeks the following relief:

1.     Permission to supplement the Record on Appeal.

2.     An extension of time to develop by further evidence or documenting testimony supporting Appellant's contentions.

3.     Allow the Record on appeal to be supplemented by Appendix.

4.     Any further relief the Court may deem necessary in the premises.

RESPECTFULLY SUBMITTED,

_Nathaniel D. Owens (OWEO1O)_

Attorney for Appellant, Anthony

Burden

**OF COUNSEL**

**REMEDIES LEGAL SERVICE PC**

**NATHANIEL D. OWENS**

**ATTORNEY FOR APPELLANT**

**111 S. QUINTARD AVE.**

**P.O. BOX 2641**

**ANNISTON, AL 36201**

### CERTIFICATE OF SERVICE

We hereby certify that we have this day served a copy by first class

mail postage pre-paid to the Attorney General's Office at 11 South

Union Street, Third Floor, Montgomery, Alabama on this the 29th

day of ___April___, 2003.

**OF COUNSEL**

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF ALABAMA

| | | |
|---|---|---|
| Anthony Burden | X | |
|     Appellant, | X | Case No.: CR-02-0682 |
| | X | Circuit Court Randolph |
| Vs. | X | County No.: CC-01-114 |
| | X | |
| State of Alabama | X | |
|     Appellee. | X | |

## AFFIDAVIT

**STATE OF ALABAMA**

**COUNTY OF RANDOLPH**

Before me the undersigned authority appeared **LaToya Hendricks Burden** who after being duly sworn deposes and says as follows:

1) I am **LaToya Hendricks Burden** and I am a resident citizen of Randolph County, Alabama and I reside in Roanoke, Alabama.

2) I am the granddaughter of Jeanette Baker who was the chief prosecution witness in the trial of The <u>State of Alabama v. Anthony Burden & Phillip Burden</u> CC 01- 114 & 115 consolidated for trial of murder.

3) Mr. Anthony Burden is the father of my child which was conceived and born out of wedlock, March 10, 2001.

4) It is my belief that Ms. Jeanette Baker testified untruthfully with a bias against Anthony Burden because he fathered my

child out of wedlock. We were married in April 2001 after the child was born.

5) Jeanette Baker testified at the trial that she was not in favor of the marriage because of my age, that was not true.

6) The police arrested and charged Anthony Burden with murder based primary on what Jeanette Baker, her daughter and her two relatives said that Anthony Burden had said.

Submitted,

*LaToya Burden*                                    4-28-03

**LaToya Hendricks Burden**                        **Date**

**State of Alabama**                    *

**County of Randolph**                  *

Personally appeared before me, the undersigned authority in for the state and country aforesaid, the within named *La Toya Burden* who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing affidavit are true and correct as there in stated.

Sworn and subscribed before me this the *28th* day of *April* 2003.

*Pandra R Gay*

**Notary Public**

# AFFIDAVIT

**Filed in Office**

**STATE OF ALABAMA**

**COUNTY OF RANDOLPH**

APR 2 3 2003

KIM S. BENEFIELD
Clerk of Circuit Court

My name is *Charlie Harris Chief of Police*. I have personally

known John Wesley Bell for a number of years. I have known him to be a police officer

for a large number of years. I know John Wesley Bell lives in Randolph County in the city of

Roanoke, Alabama. John Wesley Bell is now retired from day to day police work.

Submitted,

*Charlie Harris*     4-23-03.
_____
Date

**STATE OF ALABAMA**               )
                                   )     ss:
**RANDOLPH COUNTY**                )

I, *Penny Holloway*, a Notary Public for the State at Large, hereby certify

that *Charlie Harris*, whose name is signed to the foregoing Affidavit and who is known

to me, acknowledged before me this day, that being informed of, and understanding, the contents

of the same, that he [or she] executed the same voluntarily on the day the same bears date.

Given under my hand and seal on this ___23___ day of ___April___, 2003.

*Penny Holloway*
_____
Notary Public
State at Large
My Commission Expires: 4-27-04

CR-02-0682

**CITY OF ROANOKE**

BETTY SLAY ZIGLAR
MAYOR

ELLEN W. FARMER
CITY CLERK

POST OFFICE BOX 1270
ROANOKE, ALABAMA 36274

PHONE: (334) 863-4129 • FAX: (334) 863-2137
E-MAIL: CITYRONK@TELECLIPSE.NET

COUNCILMEMBERS:
RICHARD FETNER,
MAYOR PRO TEM
TAMMI HOLLEY
MACK ARTHUR BELL
BUSTER ROBINSON
WALTER SUDDUTH

April 23, 2003

Filed in Office

APR 2 3 2003

KIM S. BENEFIELD
Clerk of Circuit Court

TO WHOM IT MAY CONCERN:

This is to verify that John Wesley Bell was employed with the City
of Roanoke as a patrolman beginning August 8, 1982 until his retirement
June 1, 1998.

Sincerely,

*Ellen Farmer*

Ellen Farmer
City Clerk

I Penny Holloway acknowledge Ellen Farmer
is known by me.

Given under my hand and seal on this 23rd
day of April, 2003.

Penny Holloway
Notary Public
State at Large
My commission expires 4-27-04

## U.S. Census Bureau

State and County *QuickFacts*

QuickFacts Main | FAQs | What's New



# Randolph County, Alabama

Alabama counties - view map

Select a county ▾  **Go**

Locate a county by place name

Select a state
USA QuickFacts

Follow the 🛈 link for
definition and source information.

**Browse more data sets for Randolph County, Alabama**

| | People QuickFacts | Randolph County | Alabama |
|---|---|---|---|
| 🛈 | Population, 2001 estimate | 22,529 | 4,464,356 |
| 🛈 | Population percent change, April 1, 2000-July 1, 2001 | 0.7% | 0.4% |
| 🛈 | Population, 2000 | 22,380 | 4,447,100 |
| 🛈 | Population, percent change, 1990 to 2000 | 12.6% | 10.1% |
| 🛈 | Persons under 5 years old, percent, 2000 | 6.6% | 6.7% |
| 🛈 | Persons under 18 years old, percent, 2000 | 25.1% | 25.3% |
| 🛈 | Persons 65 years old and over, percent, 2000 | 15.9% | 13.0% |
| 🛈 | Female persons, percent, 2000 | 51.7% | 51.7% |
| 🛈 | White persons, percent, 2000 (a) | 76.4% | 71.1% |
| 🛈 | Black or African American persons, percent, 2000 (a) | 22.2% | 26.0% |
| 🛈 | American Indian and Alaska Native persons, percent, 2000 (a) | 0.2% | 0.5% |
| 🛈 | Asian persons, percent, 2000 (a) | 0.2% | 0.7% |
| 🛈 | Native Hawaiian and Other Pacific Islander, percent, 2000 (a) | Z | Z |
| 🛈 | Persons reporting some other race, percent, 2000 (a) | 0.3% | 0.7% |
| 🛈 | Persons reporting two or more races, percent, 2000 | 0.6% | 1.0% |
| 🛈 | Persons of Hispanic or Latino origin, percent, 2000 (b) | 1.2% | 1.7% |
| 🛈 | White persons, not of Hispanic/Latino origin, percent, 2000 | 75.7% | 70.3% |
| 🛈 | Living in same house in 1995 and 2000, pct age 5+, 2000 | 66.3% | 57.4% |
| 🛈 | Foreign born persons, percent, 2000 | 1.2% | 2.0% |
| 🛈 | Language other than English spoken at home, pct age 5+, 2000 | 2.7% | 3.9% |
| 🛈 | High school graduates, percent of persons age 25+, 2000 | 61.9% | 75.3% |
| 🛈 | Bachelor's degree or higher, pct of persons age 25+, 2000 | 10.0% | 19.0% |
| 🛈 | Persons with a disability, age 5+, 2000 | 5,181 | 945,705 |
| 🛈 | Mean travel time to work, workers age 16+ (minutes), 2000 | 31.2 | 24.8 |
| 🛈 | Housing units, 2000 | 10,285 | 1,963,711 |
| 🛈 | Homeownership rate, 2000 | 79.2% | 72.5% |
| 🛈 | Housing units in multi-unit structures, percent, 2000 | 4.7% | 15.3% |
| 🛈 | Median value of owner-occupied housing units, 2000 | $63,800 | $85,100 |

*(handwritten annotation: 5,002 persons)*

| | POPULATION TOTAL | WHITE | AMERICAN | NATIVE | | |
|---|---|---|---|---|---|---|
| ...unty | 1,561 | 1,331 | 494 | 13 | 2 | 0 |
| ...erview town, Escambia County | 99 | 96 | 93 | 1 | 1 | 0 |
| Roanoke city, Randolph County | 6,563 | 6,521 | 3,868 | 2,610 | 4 | 17 | 0 |
| Robertsdale city, Baldwin County | 3,782 | 3,742 | 3,565 | 125 | 27 | 9 | 0 |
| ...ck Creek CDP, Jefferson County | 1,495 | 1,491 | 1,478 | 4 | 6 | 1 | 0 |
| ...ckford town, Coosa | | | | | | |

PUBLIC LIBRARY OF ANNISTON
AND CALHOUN COUNTY
108 East 10th Street
ANNISTON, ALABAMA 36201