*Porter*
*12/19/03*

# IN THE SUPREME COURT FOR THE STATE OF ALABAMA

| | | |
|---|---|---|
| ANTHONY EUGENE BURDEN | ) | |
|    Petitioner/Appellant | ) | |
| | ) | |
| Vs. | ) | SC NO.:_____ |
| | ) | |
| STATE OF ALABAMA | ) | |
|    Respondent/Appellee. | ) | |

## PETITION OF WRIT OF CERTORARI

## AND

## BRIEF IN SUPPORT OF APPLICATION

Respectfully Submitted,

*/s/ Nathaniel D. Owens*

Nathaniel D. Owens
Attorney for Appellant Petitioner
P.O. Box 2641
Anniston, Alabama 36201

**EXHIBIT F**

# TABLE OF AUTHORITIES

| AUTHORITIES | PAGE REFERENCE |
|---|---|
| Acceptance Insurance v. Brown | 3 |
| Dawson v. State | 5 |
| Pace v. State | 6 |
| State v. Freeman | 6 |
| Taylor v. State | 5 |
| Tomlin v. State | 6 |
| Whitten v. Allstate Insurance | 6 |
| United States v. Attell | 7 |

# IN THE SUPREME COURT OF ALABAMA

| | |
|---|---|
| ANTHONY EUGUNE BURDEN | ) |
|     Petitioner/Appellant, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF ALABAMA | ) |
|     Respondent/Appellee. | ) |

Circuit Court of Randolph County

SC NO._____

## Petition for Writ of Certiorari

**TO THE SUPREME COURT OF ALABAMA**

Comes your Petitioner ANTHONY BURDEN and petitions this Court for a Writ of Certiorari to issue to the Court of Criminal Appeals in the above styled cause under Rule 39, ARAP, and shows the following:

1. Petitioner was convicted of the charge of murder in the Circuit Court of Randolph County, Alabama, on 11/06/02. The Court of Criminal Appeals affirmed the judgment on 10/24/03. An application for hearing was filed on 11/07/03 and overruled on 11/21/03.

2. A copy of the opinion of the appellate court is attached to this petition which shows the Court of Criminal Appeals case to be No. CR-02-0682.

3. Petitioner alleges as grounds for the issuance of the writ the following:

The basis if this petition for the issuance of a writ of certiorari is whether the appellate court erred in holding that the trial Court did not commit reversible error when it failed to hold a hearing to inquire into the conduct of juror, Detina Jones and declare a mistrial for misconduct and grant to petitioner a new trial.

Petitioner respectfully requests that after a preliminary examination, the writ of Certiorari to be granted and that this court proceed under its rules to review matters complained of, and for such other relief as petitioner Anthony Burden Eugene Burden may be entitled.

I certify that I have this day served copies of this petition and the brief on all other parties to the appeal in the Court of Criminal Appeals.

                                               **Nathaniel D. Owens (OWE010)**
**Attorney for Petitioner**
**Anthony Eugene Burden**
**REMEDIES LEGAL SERVICE, P.C.**
**P.O. Box 2641**
**Anniston, Alabama 36202**

## BRIEF IN SUPPORT OF PETITION FOR WRIT OF CERTIORATI

In affirming the trial court's order of judgment against petitioner Anthony E. Burden and his motion for new trial on the ground that Juror, Detina Jones was guilty of juror misconduct, the trial court exceeded its discretion in refusing to grant said motion for new trial.

## STANDARD OF REVIEW

The case of *Acceptance Insurance Company. vs. Brown.* 832 SO.2d 1,12 (Ala.2001) sets out the premise that the denial of a motion for a new trial is within the sound discretion of the of the trial court especially on the issue of juror misconduct.

In the case before this court the record reflects that during the venire the trial court and the defense attorneys asked pointed questions about any knowledge or relation to the victim and the victim's family that any potential juror might have. Even though the record showed several potential jurors responded to the question of any possible personal relationship with the victim's family, Juror, Detina Jones did not respond to any of the inquiry. The record is silent as to any response by juror Detina Jones. The jury selection process was completed and Detina Jones was selected as a juror in the murder trial wherein the victim was a member of the family of Jeanette

Baker. Only after the jury returned its verdict of guilty to the charge of murder against both defendant Phillip Burden and appellant / petitioner Anthony E. Burden was it discovered that juror Detina Jones had been seen by three different witnesses driving away from the trial court with a subject by the name of John Wesley Bell. Because the discovery of the possible jury misconduct took place after the jury had left for the day on Wednesday October 30th 2002, it was the following week before the investigation determined that John Wesley Bell was the brother-in law to Jeanette Baker. Because the primary investigation was focused on the possible improper contact with prosecution witness Jeanette Baker, a hearing was requested and conducted by the trial court, but it was not in conjunction with the actions of Detina Jones for the fact that the actions of Detina Jones being picked up by John Wesley Bell had not been identified. Once the three (3) affidavits were done, a motion for a new trial and mistrial was made and argued and denied by the trial court. At the hearing Jeanette Baker testified that her sister was married to John Wesley Bell. She also testified that she had seen John Wesley Bell at the trial on at least Tuesday and Wednesday October 30, 2002. The appellant court's position in affirming the trial court states "when the trial court asked the jurors if they knew the victim or his family Detina Jones did not respond. Jeanette Baker then testified that her

sister was married to John Wesley Bell. However, the appellant failed to offer any evidence that Detina Jones had been aware of this fact during voir dire. Witnesses saw Jones with Bell on October 30, 2002. There was no evidence that Bell had been present, or that Jones had seen him, prior to voir dire on October 28, 2002.

The state would have us believe that unless the juror, Detina Jones, sees John Wesley Bell before the voir dire on October 28, 2002 she did not know John Wesley Bell was connected to the victim or his family. What did the trial court do with the information it had on the conduct of juror Detina Bell? Can we find in the record any questions raised by the trial court after the trial court was made aware of the possible misconduct of juror, Detina Jones. The petitioner made a formal motion for mistrial and request for a new trial. _Dawson v. State_ 710 So. 2d 472 (Ala. 1997) is the case that was cited s showing the trial court having the duty of conducting a painstaking and careful inquiry, to determine if a juror has committed misconduct. The issue of whether the trial court abused its desecration is wrapped in looking at the action of the trial court under the circumstance of this case. We cite _Taylor v. State_, 808. So.2d 1148 (Ala. Crim. App.2001), we are protected from the jurors like Detina Jones who refuses to answer truthfully, this should be grounds for a new trial. This court held that a juror's failure to

respond truthfully to questions during voir dire warranted a new trial. *Tomlin v. State*, 695 SO. 2d 157, 175-76 (Ala Crim. App.1996); *State v. Freeman*, 605 SO 2d. 1258, 1259-60 (Ala. Crim. App.1992) That court went on to state "Moreover, juror misconduct will justify a new trial when it indicates bias affected the verdict, or when from the extraneous facts prejudice may be presumed as a matter of law." When Jeanette Baker testified at the motion for new trial/ mistrial hearing requested by the defendants, that her brother in law was John Wesley Bell and the trial court had before him three (3) affidavits showing that John Wesley Bell and juror Detina Jones were seen driving together away from the trial court on the 30th day of October 2002. We must be "hard pressed to think of anything more damning to an accused than the presence of a family member of the victim with a juror during the trial. Where is the fair trial? See the case of *Whitten v. Allstate Insurance Co.*, 447 So. 2d 655, 658.(Ala 1984).

Finally our Court of Criminal Appeals in a case not yet released for publication cited as *Pace v. State,* 2003 WL 1949787 (Ala. Crim. App.) held that "juror misconduct will justify a new trial when it indicates bias or corruption, or when the misconduct affected the verdict, or when from the extraneous facts prejudice may be presumed as a matter of law" This case cites a case from the U.S. Supreme Court that we must look boldly at during

this quest for a fair trial. See *United States v. Attell*, 655 F. 2d 703, 705 (5th Cir 1981). The trial court must be proactive and the duty to determine if a juror has committed misconduct will be based on what the trial court did not what the appellant should have done.

## *CONCLUSION*

Where is Anthony Burden's fair trial? Anthony is no longer just a black man convicted of murder in Randolph County Alabama. He now represents every man or woman, black or any other color asking us what happened to my right to a fair trial? Once the verdict of guilty was returned, it should be easy to find, out what happened to our fair trial. Murder is serious. Juror misconduct is serious. Who is responsible for digging out juror misconduct? It must be a joint effort on the part of all of us who want a fair trial. What makes this case so important to all of us is the fact that if we do not find out what made Anthony Burden's trial not be a fair trial and address it, nobody else will be able to get a fair trial. Next time it may be someone you know or you are representing or even it may be you who is charged with murder. The following facts are undisputed from the records of this case taken verbatim from text of the opinion of the Court of Criminal Appeals.

"Appellant Andrew Phillip Burden ("Phillip") was charged with murder. His nephew, appellant Anthony Eugene Burden ("Tony"), was charged as an accomplice in the crime. Both of them were found guilty at trial. The circuit court sentenced Phillip to life imprisonment and sentenced Tony to 30 years' imprisonment. The State's evidence tended to show that on June 17, 2003, Phillip got into a fight with Shawn Baker on a crowded residential street. Baker's mother Jeanette broke up the fight, and Phillip left the scene. He returned a few minutes later with a shotgun, upset and looking for Baker. Bake began to curse and taunt Phillip, and Phillip walked toward him with the gun. Several people in the crowd, including Ms. Baker and victim Jermicah Foster, tried to take away the shotgun and get Phillip to go home. Phillip's nephew Tony began to yell for Phillip to "kill them" and "shoot him". Foster said, " I haven't done anything to you", and Tony hit him. Tony then told Phillip, "shoot the MF. Bust them out. Shoot the SB". Phillip gun went off, and the bullet struck Foster in the head. Foster fell dead in the street, and Phillip and Tony fled. Phillip testified in his behalf that he did not argue with the victim just before the shooting. He said that he was mad at Baker, not the victim, and that Baker was not outside when the gun went off. He said that Jeanette Baker was hitting him on the arm and then

"somebody pulled me and the gun went off. "He said that he did not hear Tony yelling or saying anything to him before the gun went off".

Instead of one man being found guilty of negligent homicide two men were found guilty of murder. Based on the foregoing, Anthony Burden's Petition for Writ of Certiorari is to be granted and returned for further proceedings.

Submitted,

*/s/ Nathaniel D. Owens*

Nathaniel D. Owens

Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify on this 6th day of December, 2003, I served a copy of the foregoing on the Attorney General of State of Alabama by placing the same in the United States Mail, first class, postage prepaid and addressed as follow:

Office of the Attorney General
Criminal Appeals Division
Attn: John M. Porter
11 South Union Street
Montgomery, Alabama 36130-0152

*/s/ Nathaniel D. Owens*

Nathaniel D. Owens

# Court of Criminal Appeals

State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555

H.W. "BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges



RELEASED
OCT 2 4 2003
CLERK
ALA COURT CRIMINAL APPEALS

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

### MEMORANDUM

CR-02-0682          Randolph Circuit Court CC-01-114 & -115

<u>Anthony Eugene Burden and Andrew Phillip Burden v. State</u>

McMILLAN, Presiding Judge.

    Appellant Andrew Phillip Burden ("Phillip") was charged with murder. His nephew, appellant Anthony Eugene Burden ("Tony"), was charged as an accomplice in the crime. Both of them were found guilty at trial. The circuit court sentenced Phillip to life imprisonment and sentenced Tony to 30 years' imprisonment. The State's evidence tended to show that on June 17, 2003, Phillip got into a fight with Shawn Baker on a crowded residential street. Baker's mother Jeanette broke up the fight, and Phillip left the scene. He returned a few minutes later with a shotgun, upset and looking for Baker. Baker began to curse and taunt Phillip, and Phillip walked toward him with the gun. Several people in the crowd, including Ms. Baker and victim Jermicah Foster, tried to take away the shotgun and get Phillip to go home. Phillip's nephew Tony began to yell for Phillip to "kill them" and "[s]hoot

him." Foster said, "I haven't done anything to you," and Tony hit him. Tony then told Phillip, "Shoot the MF. Bust them out. Shoot the SB." Phillip's gun went off, and the bullet struck Foster in the head. Foster fell dead in the street, and Phillip and Tony fled. Phillip testified in his own behalf that he did not argue with the victim just before the shooting. He said that he was mad at Baker, not the victim, and that Baker was not outside when the gun went off. He said that Jeanette Baker was hitting him on the arm and then "somebody pulled me and the gun went off." He said that he did not hear Tony yelling or saying anything to him before the gun went off.

I.

Anthony Eugene Burden, Tony, presents three issues on appeal.

A.

Tony contends that the trial court abused its discretion by denying his motion for mistrial because, he says, two jurors behaved improperly. He first argues that one juror, Patricia Boykin had improper contact with prosecution witness Jeanette Baker. He argues that the court should have granted a mistrial because, even though Boykin was an alternate juror, she might have influenced the jury's verdict.

After the jury had found the appellants guilty, Tony's mother told the defense counsel that she had seen juror Patricia Boykin sitting and talking with Jeanette Baker in the hall a few hours earlier. The trial court conducted a hearing, at which Gwendolyn Phillips [Tony's mother], Boykin and Baker testified. Phillips said that she had seen Boykin and Baker conversing, but she did not hear what they said.[1] Patricia Boykin testified that she had seen Baker a few times at church and had said "hello" to her once during the trial,

---

[1] The defense offered affidavits from six witnesses who apparently witnessed a conversation between Boykin and a white woman with "salt and pepper" hair. There is no evidence that the witnesses heard what was said, and their affidavits are not in the record.

2

when Baker was sitting on a bench in the hall. She said that she did not indicate that she knew Baker during voir dire because she did not know Baker's name until Baker testified. She said that her conversation with Baker was not improper and that she did not discuss Baker with any of the other jurors. Jeanette Baker testified that she had a conversation with a white woman with gray hair while she was sitting on a bench in the hall. She said that the woman she talked to was not one of the jurors but a person who was waiting to get a shot at the Health Department.

The defendant has the initial burden of proving that a juror accused of misconduct did, in fact, commit the act alleged. Dawson v. State, 710 So. 2d 472 (Ala. 1997). The trial court then has the duty of conducting a painstaking and careful inquiry, determining whether a remark was made and whether the remark had a prejudicial effect on the jury. Taylor v. State, 808 So. 2d 1148 (Ala. Crim. App. 2000). A motion for mistrial is a drastic remedy which should be used only to prevent manifest injustice. Ex parte Thomas, 625 So. 1156 (Ala. 1993).

Here, the appellant offered evidence of an improper communication. The trial court conducted a thorough inquiry, and the appellant failed to offer any evidence that the communication could have influenced the jury. Boykin, an alternate, did not serve on the jury, and her testimony that she did not discuss Jeanette Baker with anyone who served on the jury. Therefore, the trial court did not abuse its discretion by determining that a mistrial was not warranted.

B.

Tony contends that a mistrial also should have been declared because another juror, Detina Jones, intentionally failed to disclose her personal relationship with the victim's family. At the hearing, Tony offered the affidavits of three witnesses who saw Jones leave the courthouse and ride in a vehicle with a man named John Wesley Bell. Tony argues that Bell is married to the sister of Jeanette Baker, the State's chief witness and mother of the victim, and that Jones should have disclosed her relationship with him during voir dire.

When the trial court asked the jurors if they knew the

3

victim or his family, Detina Jones did not respond. Jeanette Baker then testified that her sister was married to John Wesley Bell. However, the appellant failed to offer any evidence that Detina Jones had been aware of this fact during voir dire. Witnesses saw Jones with Bell on October 30. There was no evidence that Bell had been present, or that Jones had seen him, prior to voir dire on October 28.

There also was no evidence that Detina Jones would have known why Bell was present if she had seen him before voir dire. Jeanette Baker testified that she recognized Detina Jones as a person she knew. She said that she had not realized that Jones was related to John Wesley Bell or recognized Jones' name. There was no evidence that Detina Jones connected Bell to the victim. The appellant failed to meet his initial burden of proving that the juror committed an act of misconduct. Therefore, the trial court did not abuse its discretion by denying his motion for mistrial without a further investigation. Dawson v. State, supra; Ex parte Thomas, supra.

C.

Tony's third contention is that the trial court erred by denying his motion for a directed verdict at the close of the State's case. He argues that the State failed to introduce sufficient evidence to convict him of murder because the testimonies of Jeanette Baker and her family members[2] were biased. He argues that, without their testimony, the shooting was a negligent homicide.

The credibility of witnesses is for the jury to judge and determine. Harris v. State, 513 So. 2d 79 (Ala. Crim. App. 1987). This court will not disturb the jury's verdict on conflicting evidence. Dixon v. State, 476 So. 2d 1236 (Ala. Crim. App. 1985). Here, the State offered evidence that when Shawn Baker taunted Tony's uncle Phillip, Tony yelled for

---

[2] In support of his claim of bias, the appellant filed several affidavits with his appellate brief. Exhibits attached to briefs are not part of the record and may not be considered on appeal. Royer v. State, 542 So. 2d 1301 (Ala. Crim. App. 1989).

4

Phillip to shoot and to kill him. Jermicah Foster tried to stop Phillip, and Tony hit him and yelled to Phillip, "Shoot the MF. Bust them out. Shoot the SB." Tony's words and actions were "calculated to incite or encourage" Phillip to shoot Foster and therefore were sufficient to make him legally accountable as an aider or abettor. Scott v. State, 374 So. 2d 316, 318-19 (Ala. 1979).

II.

Andrew Phillip Burden presents two issues on appeal.

A.

Phillip's first contention is that he was prejudiced because the trial court incorrectly and insufficiently instructed the jury regarding an accidental shooting, which was his primary defense. He argues that his own testimony established a reasonable theory of homicide by accident and that he was entitled to a more thorough and complete explanation of the law on this defense. More specifically, he argues that the court did not explain the elements or the relative burdens of proof and also failed to instruct the jury that a not-guilty verdict was warranted if they believed his testimony regarding this defense.

The trial court instructed the jury as follows in the oral charge:

> "A homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was lawful."

After the charge, the appellant stated that he wanted to renew the objections he had made during the charge conference. At the conference, the appellants had discussed charges on criminally negligent homicide and manslaughter and had stated that they were requesting a charge on criminally negligent homicide only. The judge refused to give the charge, stating, "I don't see how the jury could find a basis of negligence." After the parties discussed the court's charge on aiding and abetting and the various verdicts available to the jury, the defense counsel stated:

"Prosecution requested charge number four, Defendant Phillip Burden vehemently objects to the giving of this charge unless it is given in the (sic) conjunction with the previously criminally negligent homicide. They are intertwined and I guess the term negligence as previously discussed before the Court."

The State's requested Charge No. 4 states:

"A homicide is not excusable on the ground of accident or misadventure unless it appears that the act of the slayer was lawful and free from negligence."

The words "and free from negligence" have been crossed out on the written copy, apparently in response to the counsel's objection during the conference. Nothing further regarding Charge No. 4 appears in the record, and the appellants apparently did not request any instructions of their own.

Rule 21.2, Ala. R. Crim. P., provides that a party may not assign as error the court's failing to give a written instruction or the giving of an incomplete oral charge, unless the party objects before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of the objection. Here, the appellant failed to properly object to the trial court's charge. An appellant is bound by his objections at trial. Reynolds v. State, 484 So. 1171 (Ala. Crim. App. 1985). A failure to object and get a ruling on the record preserves nothing to review. Robinson v. State, 441 So. 2d 1045 (Ala. Crim. App. 1983).

B.

Phillip contends that the trial court erred in refusing to charge the jury on the lesser included offense of criminally negligent homicide. He argues that the jury could have reasonably inferred that his act of retrieving a loaded weapon and searching for Shawn Baker on a crowded street showed that he failed to perceive a substantial and unjustifiable risk that the weapon would discharge. He argues that neither "the victim nor anyone else posed a threat of

6

imminent confrontation" because he was searching for Shawn Baker, who was not on the scene. He further argues that because he did not wrestle over the gun or fire the gun at Baker and accidentally hit Foster, there also was "no imminent threat that the gun might discharge." He argues that because he testified that he had been drinking alcohol earlier in the day, the jury also could have inferred that the alcohol affected his ability to perceive the risk of his act.

The Commentary to § 13A-6-4, Ala. Code 1975, explains the difference between reckless behavior and criminal negligence:

> "A common denominator in both is that in each instance the underlying conduct must involve a `substantial and unjustifiable risk' that a result or circumstance described in the penal statute will occur or exists. The reckless offender is aware of the risk and `consciously disregards' it. On the other hand, the criminally negligent defendant is not aware of the risk created (`fails to perceive') and, therefore, cannot be guilty of consciously disregarding it."

The appellant testified that he had retrieved the loaded shotgun in response to his earlier argument with Shawn Baker. "One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence." Robinson v. State, supra, at 1047. Here, it was undisputed that Phillip brandished a loaded gun in a crowd, seeking confrontation. The risk that the gun might fire was not lessened because his original target went inside. Compare Reeves v. State, 580 So. 2d 49 (Ala. Crim. App. 1990)(charge on criminally negligent homicide proper because defendant removed clip from pistol and thought gun was no longer loaded); Kennedy v. State, 494 So. 2d 792 (Ala. Crim. App. 1986)(charge on criminally negligent homicide proper because, in attempt to avoid confrontation, defendant retrieved gun before husband could get it).

With regard to the issue of intoxication, this court stated in Williams v. State, 506 So. 2d 368 (Ala. Crim. App. 1986):

7

> "The fact that the defendant had several drinks before the fatal encounter with the victim did not entitle him to a charge on criminally negligent homicide. Even if he had been intoxicated, that circumstance would not have been legally sufficient to render him unaware of the risk he created by drawing his pistol. Ala. Code 1975, § 13A-3-2(b). (`When recklessness establishes an element of an offense and the actor is unaware of a risk because of involuntary intoxication, his unawareness is immaterial in a prosecution for that offense.') Voluntary intoxication can never, therefore, reduce manslaughter to criminally negligent homicide."

For the foregoing reasons, the convictions and sentences of both appellants are due to be affirmed.

AFFIRMED.

Cobb, Baschab, Shaw, and Wise, JJ., concur.